Good morning, your honors. My name is Luis Cortez from the Immigrant Advocacy and Litigation Center. I'm here on behalf of the petitioner and I will endeavor to save two minutes for rebuttal. All right, counsel, please be reminded that the time showing is your total time remaining. Yes, your honor. Thank you. Thank you. Your honor, we're here to review the board's denial of a motion to reopen. And I think really the centerpiece and what's the biggest problem in the board's decision is the way that the board characterized changed circumstances in the country to those of changed personal circumstances. And so in order to reopen the case, looking at the text first, 8 CFR 1003.2 requires that there will be a showing of a change circumstances arising in the country where the person might be deported to. And here, the petitioner argued both in its motion to reopen and before this court that the change circumstances was the removal of her father to Mongolia. And that that is what gives a new claim to asylum that she did not previously have available to her to present. And so the biggest problem here is that the board's decision, while it does dive into some of the other evidences and other documents that were submitted, it doesn't at all mention the father's removal and so his now placement in Mongolia as a changed circumstance in that country. And we think our position is that it makes sense that that would be considered a changed circumstance in that country and not a personal circumstance. Counsel, this case has been a bit of a moving target. It seems like every time she gets before the board, the nature of the argument, the persecution changes. At one time, she was asking to stay in the United States at the same time that her father was asking to stay in the United States. And the problem I thought one of the problems was that they have the same attorney that would have put them both in the US. Now that he's been sent back to Mongolia, her claim is I can't go back to Mongolia because my father is there. So there's a little bit of a disconnect in the way that that these arguments have proceeded before the board. And I'm not sure I see the problem with the father having been removed to Mongolia. So in the initial proceedings when both the father was here and she was here, her claim was based on a T-based claim, not necessarily on the persecution of the father because the father wasn't in Mongolia to continue the persecution work till he'd be removed. Now that he is removed and he's in Mongolia. And so that's where she might ultimately end up being deported to. She is not going back to a country where her persecutor is at. And so that is the difference and the difference in claim and why it's being brought in a motion to reopen now that the father has been removed. And it's not a, I don't think it would be a fair characterization to call this a personal circumstance as the government has been doing in its documents because a personal circumstance would be something that the person could, has control, potentially has control over and can change within themselves, whether that's a change in religion. That's not the limit of a personal circumstance. It's a circumstance that, you know, is pretty much limited to the applicants personally and not, and there's no showing of any wider effect. I mean, it doesn't necessarily have to do with the state of mind or feeling, does it? No, your honor. And I think in this case where it extends beyond the personal circumstance into a changed circumstance in the country is the fact that the persecutor is now in the country where she is going to be removed to where he wasn't in the country when he was going through. By the way, let me ask the following question to what Judge the petitioner here were both in the U.S. Were they living in the same town? You know, they were living in the same town, your honor. And according to some of the evidence that was submitted with the motion to reopen, it sounds like the abuse continued here in the United States too with her, the rest of her family who was also seeking asylum and their applications for here. The circumstances change where the country now has the persecutor. And I think it would be different if he was always in Mongolia and she was here and they had some sort of falling out where now she's afraid to go back, but he's always been there. I think that ties closer to a personal circumstance. But the fact that he's now in Mongolia where he wasn't before is a change in circumstance in the country. And I think that that is where it shifts from one to the other. Let me ask you, you used up about half your time. Let me ask you to address, first of all, are you making a claim that you're or your client's entitled to equitable tolling with respect to the time to make the motion to reopen? Are you making that argument? That was something that was argument before the board and the in the briefs, your honor, based on not being able to find or realize the conflict by the client. Though I think that the the this court doesn't necessarily need to reach that issue. It could rule on the favor of our client if it finds that the not mentioning and not considering the father being deported is a change in circumstance. What kind of argument did you make to the board on this equitable tolling? Your honor, it looks like it was fashioned as both a something that wasn't discovered and also looks like it was it didn't outright say ineffective assistance of counsel, though it seemed to have implied it in the in the briefs, though it didn't. You know, admittedly, the briefs before the board didn't grapple with the Lazada effects, though it did seem to imply that there was a it wasn't discovered until much, much later that by the client. Are you excused from complying with Lazada? Your honor, I you know, I think that the the mistake or the the deficiency performance here is so apparent on its face that it is excused from Lazada. And that's something that seemed to have been brought up before the board that the conflict of representing both the person who prejudiced her from bringing out her full claim or even just developing that. The board, the board never addressed the Lazada issue. No, it wasn't brought up that specifically before the board, was it? At least the board didn't address it. The board did not address it, your honor. The board did not address it. That is right. And so it rested its recent decision on looking through some of the country condition reports and the why as a matter of degree, that didn't seem to change sufficiently enough to reopen her case. So the really then the error becomes, well, what what about the deportation of the father? And I think what is important here, your honor, and then I'll try to save the rest of my time for rebuttal. We're not asking the court to remand this case to be reopened. We I think the remedy here would be for the board to then look at the whether the father's removal as a matter of a changed country condition, then as a matter of degree is sufficient to reopen her case or not. And I think that's something for them to appropriately look at at first instance, but not looking at it at all as a changed circumstance in the country, I think is where the legal error here was. And I'll try to save the rest of my time for rebuttal if there are no further questions. All right. Thank you, counsel. Thank you. We'll hear from the government. And please record, John, hope for the attorney general board did not abuse its discretion in denying the motion to reopen her petitioner didn't establish materially changed circumstances. Judge Stanley Sporkman, a district court judge in Washington, said there's a key that unlocks every case. The problem is to find the key. And the key is whether there were materially changed circumstances between 2007 and 2018. Petitioner does not establish that the board acted arbitrarily, irrationally or contrary to law. And she doesn't establish that the evidence that she submitted in her motion to reopen was qualitatively different. The board did exactly what you asked the board to do when you remanded this case previously. Can you compare the board's decision that you saw when it first came up in 2018 at AR-23 with what the board did at pages three through six? You'll see that the board in the first decision expressed the conclusion. In the second decision that you're doing today, it did exactly what you told them to do. 15 times the board cited tab F, which is the petitioner's motion to reopen. Petitioner even conceived that the board painstakingly went through the evidence. And they assert that the board cherry-picked. If the board cherry-picked, they got a whole bushel basket of facts to support the point that petitioner didn't carry her burden to substantially change, to establish materially changed circumstances. Counsel, opposing counsel's position is that the board didn't hone in on the fact that her father had been removed to Mongolia. Where did the board address that point? The board did not address that point. And that goes to an interesting point, Judge. Petitioner on page eight of her reply brief states that the removal of her father was a material change in the makeup of the Mongolian population. That's a pretty extraordinary statement to say a removal of one person to a country materially changes the makeup of an entire population. They said it was a major change in country's conditions. On the contrary, the board looked at the evidence, 100 plus pages of documents that petitioner submitted to the board and explained why that evidence was not a sufficient to carry a burden. Counsel, I take it that you're making a distinction between a change in personal circumstances and a change in country conditions. Exactly. And that's what the law is. That's very important here. One word that's missing in petitioner's brief is the principle word in Shandra, which says if petitioner establishes materially changed circumstances, if, in other words, that's the threshold requirement that a petitioner in a motion reopened has to meet. So if they establish materially changed circumstances, then the petitioner may introduce evidence to establish a link, the materiality of the personal circumstances. The courts were aware of Muslim-hating cases arise in a religious context where a person is persecuted often on the basis of religion. And they change the, they assert that the circumstances in the country have materially changed with regard to persecution of religion. Once they meet that threshold, then they're able to establish, and that's my religion, one of the cases related to persecution of a Chinese in Indonesia. And then the motion reopened said, oh no, now they're persecuting Catholics. And secondly, and this is that, this is the point where a personal circumstance comes in, and I am a Catholic convert. So you go to the personal circumstances after you fulfill the threshold requirements of establishing the materially changed circumstances. That's why the key to this case, the key to unlock this case, is that the board concluded petitioner didn't carry her burden to establish the difference between the evidence in 2007 and 2018. Mr. Holt, the petitioner says, Mr. Cortez, is that, is it correct? The board did not address the petitioner's equitable tolling ground to, you know, to extend the time to reopen. Is that, is that true that the board did not address it? That is correct, Your Honor. Now, but, but do you agree that the petitioner did raise such an argument? No, we do not. You referred to it in a footnote in your brief, right? Yes, we do. And if you look at the record, the only place, even for a word search of the entire document, the only place that equitable tolling appears, page 53, 54, where she tucks it in an argument, she doesn't address at all that the equitable tolling legal authority is the basis to excuse the untimely petition. That's just not true. Page, page 52 of the record, the argument, A, this is for A, the board has jurisdiction to hear respondents' motion to reopen. She begins by saying, a motion to reopen generally must be filed within 90 days of the final order of removal, but there are some exceptions. And then goes on in the next page, on page 53, to talk about how she did not learn of, of her eligibility for asylum until retaining current counsel and that he was, that he was representing her father at the same time. You're right, Your Honor, we're on the same page. Page 53 is where her reference to equitable tolling appears. And it's in the context of asserting that the court does have jurisdiction over that point. My point is simply this, that is tucked in and not really presented as a primary point to the board. If you compare that argument to the equitable tolling argument that she's presented in her brief to this court, it's night and day. Women say that the board was not on notice with mere passing reference on page 53 to equitable tolling. Moreover, she hasn't demonstrated prejudice or she hasn't demonstrated diligence, so we would respectfully submit that it would be futile to recommend the equitable tolling argument. Of diligence be put to the, to the board. If you were here supporting the board, because they found there was a lack of diligence, that'd be one thing, but you've already acknowledged to us that the board didn't mention it. That's correct, Your Honor, there can be no misunderstanding. The board did not mention the equitable tolling issue at all. So what's your position on the prejudice showing? Your Honor, I think it would be inappropriate to comment on the prejudice showing if the board didn't go there. I'm sorry? I think it would be inappropriate to extrapolate on the prejudice showing because the board didn't go there. The board didn't address the equitable tolling issue, so it would be conjecture for me to argue prejudice. So you're saying if we have a question in our mind regarding prejudice, we should remand it to the board? Well, we don't invite another remand, a third shot at it on that basis. The reason why is, first of all, she didn't exhaust it, and secondly, she hasn't demonstrated to this court a culpable claim with regard to prejudice. Well, but you said you didn't want to discuss prejudice. So if you don't want to discuss prejudice, we have no choice but to remand it to the board to address it. I think a futility doctrine would come into play. A futility doctrine, there's no need for the court to do so in this particular case. How could we find that it's futile in this case when the same lawyer was representing her, was representing her father, and it looks like she's got, and the whole basis for her argument right now is, yeah, I was being persecuted by my father. This was a miserable relationship, and reading the evidence from her mother, this sounds like this was a pretty awful marriage and pretty tough family life. As you see quite frequently, these are difficult cases in regard to human situations and family situations, domestic violence. We understand that. We would submit that the real focus here is whether or not we should focus on the discrimination issue and the domestic violence issue and not on the question of what she, the relationship she had with her father in the before she raised her claim in our motion to reopen of a conflict of interest. Yeah, counsel, the difficulty I'm having with this case is even if we say that there was a conflict of interest, I'm not sure that that makes a difference if there was a requirement to show change country conditions. That's the dilemma I have in this case. You didn't seem to want to address that. Well, we would take the position, as I opened my argument with, that when you finish with cases, the failure to establish materially changed country conditions, and we would ask the court to inform the courts holding that they did not abuse their discretion on that ruling. Thank you. All right. Rebuttal. Thank you, Your Honor. So I think, you know, Your Honor's really, I think, honed in on the issue here, which is, you know, multiple times on the motion to reopen, and this is on page 53 of the record, where it says on the motion to reopen that the deportation was a changed circumstance. Again, you know, it was brought up in page 64 of the administrative record and the brief, page 14 of the opening brief, page eight of the reply brief, and it would have been one thing if the board disagreed that it was a changed circumstance and more of a personal change or a personal dilemma, but it didn't even go there, and that's really what gave rise to the entire claim. And so, Counsel, how does your claim of changed country circumstances feather with the argument about the ineffective assistance of counsel? The ineffective assistance of counsel seems to me that it has to go back, it has to relate back to 2007, when you weren't raising changed country conditions. So if you want to make the attorney argument, then you've got to be arguing that she didn't get a good shot the first time because it was botched when counsel was representing both of them. The country conditions are completely separate from that. And I think those are two very, very different arguments, and I don't think they're of equal merit here. And if I may answer, because I'm running out of time, and then I will save, then I'll conclude. I think they go to two different things, Your Honor. One of them in the prejudice with the prior attorney goes to the claim about past persecution, right? What happened in the past from her dad. And then now the dad being in Mongolia, goes to the future persecution of what she will face if she's going to face in the future. And so I think that rises to two different claims that she could have one that she could have brought. And that would then give a presumption of future persecution that could have been done rebutted by the government. And then the dad being deported to Mongolia is a claim of future persecution, not a claim of past persecution. Counsel, I thought that IAC claim was used to get equitable tolling to make the motion timely. Then the motion to reopen, Your Honor, if we're in an effective assistance ground, it's for that. So she could have reopened her case to show that the past persecution that she had suffered as well. And then there are new grounds of future persecution that then stem from, they're related to the past persecution. But there's a change circumstance now that he's back in Mongolia. So without equitable tolling, she doesn't get to do that because the motion is untimely, correct? Without equitable tolling, she could still file a motion to reopen for the board, except it would be under sua sponte authority, as opposed to it being told on a more regulatory statutory authority. And so that will then impact whether or not the BIA wants to reopen sua sponte without the equitable tolling, which then ultimately is given a much more discretion upon review of the score if it's not equitably told. And if it is, then she has a right to file that motion to reopen under different grounds. So now I'm unclear as to what issue you're pressing here before us today. What issue is it that you are asking us to resolve today? I think that the center issue here, Your Honor, the fact that the board did not consider the deportation of the father at all, it seems like, but less as a change circumstance. And it's not until here, before the court, where the government has made the assertion that the deportation of the father is a personal circumstance, not a change in the circumstance of the country. Do we even get to that issue if the motion is untimely? Was the motion untimely if we don't consider the ineffective assistance of counsel? Was the motion to reopen timely? So the answer is no, the motion would not be timely. But yes, the court can still consider this, but it will consider it under different reviews, whether it's contrary to the law, because it's very discretionary towards the board. We would have to see if there's legal error here as to how it's exercised its discretion. And the legal error would be that it did not consider the deportation of the father as a change circumstance in the country. So then the remand would be to consider it. And then if the board then decides in its discretion that as a matter of degree, it doesn't rise to a level to merit reopening, then that would be that. But it's still properly before this court, even if it's untimely, because we're not saying that it made a rough judgment call. We're saying that it was legal error to not consider it as a change circumstance of the country. And I think it is important to concentrate on the language because there is a lot of talk about change country conditions. And I think oftentimes when we talk about the phrase country conditions, we think about the evidence of how the country's doing as a whole. The regulation requires us to show a change circumstance in the country. And having the persecutor in the country is a change circumstance in the country. And it makes sense to read it that way, because it's not something that the petitioner has change over, where they can change religions, they can change, you know, whatever to try to bring new You're asking us to now frame this as a review of the board's sua sponte authority to address the issues that is that am I correct? Is that what you're saying now and not go on the motion to reopen and whether or not it was timely and told by equitable tolling? You are I think it's all of it's properly for the court. I think one of the glaring issues if it's unconvinced of the equitable tolling is that would still review the board's decision as a legal error. In that way. Certainly, you know, we stand by our equitable tolling arguments. But if the court disagrees, that that error still remains. And I think it even continues to remain even with the equitable tolling. But as Judge Bobby said, if you're doing equitable tolling, it's of the first proceeding, correct? That occurred. Okay, I'm okay. I don't have any other questions. I think there's a lot to sort out. Are there any other questions from the panel? All right. Thank you, counsel for your argument. The case of this argument is submitted for decision by the court. The next case on calendar for argument is Lima versus the Olmstead County Fire District.
judges: Tashima, Rawlinson, Bybee